UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KENNETH THORNTON,

          Plaintiff,

     v.

EXPERIAN INFORMATION SOLUTIONS,
INC.,

          Defendant.

No. 24 CV 624

Judge Manish S. Shah

MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth H. Thornton filed suit against Experian Information Solutions, TransUnion, LLC, Equifax Information Services, LLC, and Bank of America Corporation, alleging violations of the Fair Credit Reporting Act. Thronton and three of the defendants filed stipulations of dismissal, [30], [31], [48], leaving Experian as the only defendant in this case. Experian moves for summary judgment on all of Thornton's claims. [49]. For the reasons discussed below, Experian's motion is granted.

## I.    Legal Standards

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, I view the facts and draw all inferences in the light most favorable to the

nonmoving party, here Thornton. *Smith v. Kind*, 140 F.4th 359, 362, 364 (7th Cir. 2025).

## II.    Facts

Experian filed its motion for summary judgment along with its supporting memorandum of law and statement of material facts as required by Local Rule 56.1(a). [49], [50], [51].[1] Thornton timely filed his response to Experian's motion but failed to file a response to Experian's statement of material facts. *See* [53]; N.D. Ill. Local R. 56.1(b). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) (quoting *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)). While I view all facts and draw all reasonable inferences in Thornton's favor, all facts asserted in Experian's 56.1 statement are deemed admitted. *See* N.D. Ill. Local R. 56.1(e)(3).

In May 1995, plaintiff's parents, Jennifer L. Thornton and Kenneth H. Thornton,[2] opened a credit card account with Bank of America. [51] ¶¶ 20, 23, 24. At some point between 1995 and July 2010, plaintiff's parents added him to the account as an authorized user with joint contractual liability for its debts. [51] ¶¶ 21, 22, 25; [53] at 4.

---

[1] Bracketed numbers refer to entries on the district court docket and page numbers refer to the CM/ECF header placed at the top of filings.

[2] Neither plaintiff nor his father have a generational suffix at the end of their names. [51-8] at 6. For clarity, plaintiff's father will be referred to as Thornton Sr.

In 2013, Thornton first learned that he was a joint owner of the account and that Bank of America was reporting his obligation to Experian. [51] ¶ 26. Plaintiff and his parents attempted to remove him from the account in September of that year—first by sending a letter to Bank of America, and then by completing a form provided by Bank of America. [51] ¶ 27–29; [51-9]. Thornton does not know how Bank of America processed that request, but he remained obligated to the account for several years. [51] ¶ 30; [51-10] at 3.

In 2015, plaintiff's father, Thornton Sr., passed away. [51] ¶ 39. Plaintiff's mother continued to use the account after her husband's passing and, in 2018, the account began to carry a substantial balance month-to-month. [51-7] at 6. In early 2022, the balance on the account grew to over $42,000, and would not fall back below $40,000 before Bank of America closed it in June 2023. [51-10] at 3. Bank of America reported the account's delinquency and subsequent closure to Experian. [51-10] at 3. In 2023, Thornton entered the market for a new car but was unable to secure financing because of his negative credit history. [51-8] at 25; [53] at 5.

On August 25, 2023, Thornton first contacted Experian by phone to dispute the account's inclusion on his credit report. [51] ¶ 33. In response to Thornton's request, Experian sent Bank of America an Automated Consumer Dispute Verification form. [51] ¶ 34.

The form identifies the consumer and account involved, describes the basis for the dispute, requests that the furnisher respond by verifying or modifying the credit information as appropriate, and allows for the consumer reporting agency to include

any supporting documentation the consumer provides. [51] ¶ 13. Furnishers are required to review the dispute-verification form and either verify or update the disputed reporting. [51] ¶ 14. Once the furnisher has completed its review, it responds to the consumer reporting agency with its findings and certifies that it has verified the accuracy of the information contained in the response. [51] ¶ 14. The consumer reporting agency then sends the consumer a summary of its reinvestigation's results. [51] ¶ 15.

Bank of America responded to Experian's August 25th dispute-verification form five days later, verifying Thornton's joint responsibility for the account. [51] ¶ 34. Bank of America's response included Thornton's unique social security number and date of birth to indicate that Bank of America was not confusing him with his father. [51] ¶ 34. Experian sent Thornton the results of the dispute at the conclusion of its reinvestigation. [51] ¶ 35.

Over the following several months, Thornton submitted four additional disputes to Experian for the account—three through Experian's online dispute platform, and a final phone dispute. [51] ¶ 36–47. Each dispute followed the same pattern: Experian received a dispute from Thornton, Thornton provided no new information or additional documentation, Experian sent another dispute-verification form to Bank of America, Bank of America responded by certifying that Thornton had joint responsibility for the account and his personal information was accurate, and Experian sent the results to Thornton. [51] ¶ 36–47.

4

## III.    Analysis

Congress enacted the Fair Credit Reporting Act in 1970 with the goal of "ensuring fair and accurate credit reporting." *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 60 (2024).[3] To achieve that goal, the Act establishes a statutory scheme with three key players: furnishers, consumer reporting agencies, and courts. *See Denan v. TransUnion LLC*, 959 F.3d 290, 294–95 (7th Cir. 2020). Furnishers (e.g., banks, creditors, and collection agencies) provide consumer data to consumer reporting agencies (e.g., Experian, TransUnion, and Equifax); consumer reporting agencies compile and distribute that data to others seeking to evaluate a consumer's creditworthiness; and courts adjudicate legal disputes over debts. *Id.*

Two essential pillars of that scheme are 15 U.S.C. §§ 1681e(b) and 1681i(a)— the two provisions Thornton invokes in his case against Experian. Section 1681e(b) requires that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b). And whenever a consumer disputes "the completeness or accuracy of any item of information" contained in their credit report, § 1681i(a) requires consumer

---

[3] Some FCRA claims present difficult standing questions. *See, e.g.*, *TransUnion LLC v. Ramizerez*, 595 U.S. 413 (2021). At the summary judgment stage, "the plaintiff can no longer rest on [] 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thornton has met that standard. Through copies of his credit reports and a denial letter from Tulare County Federal Credit Union, he has set forth sufficient evidence to establish that the allegedly false information was distributed to third parties who then made an adverse credit decision (at least in part) based upon that information. [53-2]. This satisfies the requirements of *TransUnion*. *See Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 566 n.3 (7th Cir. 2021).

reporting agencies to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information." 15 U.S.C. § 1681i(a)(1)(A).

To bring a successful action under either provision, however, the "statute requires a plaintiff to show that a consumer reporting agency prepared a report containing 'inaccurate' information." *Denan*, 959 F.3d at 294 (7th Cir. 2020). Moreover, the information needs to be factually inaccurate, not legally inaccurate. *Id.*

Consumer reporting agencies' responsibility to ensure factual accuracy, but not legal accuracy, stems directly from their place in the Fair Credit Reporting Act's statutory scheme. Consumer reporting agencies are not expected nor required to maintain perfectly accurate credit reports. *Id.* Rather, consumer reporting agencies are required to "follow reasonable procedures to assure maximum possible accuracy" when preparing a credit report. 15 U.S.C. § 1681e(b). Furnishers are the entities tasked with ensuring that information provided to consumer reporting agencies correctly "[r]eflects the terms of and liability for the account." 12 C.F.R. § 1022.41(a). Logically so, since furnishers are the parties who assumed the risk and bear the loss of unpaid debt, putting them in a better position to determine its legal validity. *Denan*, 959 F.3d at 295. "Neither the FCRA nor its implementing regulations impose a comparable duty upon consumer reporting agencies, much less a duty to determine the legality of a disputed debt." *Id.*

When a plaintiff points to legal inaccuracies, like whether he had the capacity to enter the contract at the time of its inception, he is referring to non-adjudicated

6

legal defenses to his debts. *Id.* "One might speculate that a loan is illegal, … but it would be just speculation. Only a court can fully and finally resolve the legal question of a loan's validity." *Id.*

While the line between legal and factual inaccuracies is not always clear, Thornton's claims present a paradigmatic example of a legal dispute. *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021) ("The paradigmatic example of a legal dispute is when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law."). Thornton does not dispute that the account reported by Experian existed or its amount. [51] ¶ 48. He only contends that he "had no capacity to contract for the account" and so could not be held liable for its debts. [53] at 4.

As Thornton acknowledges, that contention raises several legal issues, including whether the contract is void or voidable, [53] at 4 ("The account was opened by Plaintiff's parents when he was just a child and had no capacity to contract for the account."); his parent's authority to make him jointly liable for the account, [53] at 4 (stating that Thornton's parents "placed him on [the account] when he was a child"); and whether the contract was ratified once he reached the age of majority, [53] at 4 ("Experian would like this Court to believe Mr. Thornton needed to race to the bank and remove his name from the account on his 18th birthday to avoid responsibility for it."). Resolving each of these issues requires the adjudicator to apply law to facts— rather than examine facts alone—a task outside the competency of a consumer reporting agency. *Chuluunbat*, 4 F.4th at 568 (7th Cir. 2021).

7

For Thornton's claims under §§ 1681e(b) and 1681i(a) to survive Experian's motion for summary judgment, he needs to present evidence sufficient for a reasonable jury to find that there was a factual inaccuracy in his credit report. He has not. Experian's five dispute-verification forms confirmed—as evinced by his unique social security number and date of birth—that the Kenneth H. Thornton named on the account was plaintiff, and not his father. [51] ¶¶ 33–49. Thornton has conceded that everything about the account, as represented in his Experian credit report, was accurate, except for the responsibility. [51] ¶ 48; [51-8] at 15–16; [53] at 3–4. Responsibility for the account is a legal question, not a factual one, and so Thornton cannot succeed on his claims under the Fair Credit Reporting Act.

## IV. Conclusion

Experian's motion for summary judgment, [49], is granted. Enter judgement in favor of Experian. All other claims having been resolved by stipulations of dismissal, the Clerk shall terminate the case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: July 16, 2025

8